## Dennison *v.* North Penn Iron Company, Appellant.

*Negligence—Collision with wagon—Pedestrian at street crossing—Contributory negligence.*

In an action against the owner of a wagon to recover damages for personal injuries, it appeared that the wagon was loaded with iron trusses which projected from the end. Immediately before the accident the driver approached a side street into which he intended to turn. The locality was a crowded one, and a policeman was stationed at the corner to regulate the traffic. The driver in obedience to the signal of the police officer drove his horses over the crossing for pedestrians. As he was making the turn the iron projecting from the rear of the wagon struck the plaintiff, injuring her. The driver testified that he drove as far along the principal street as he could before making the turn, that he made the turn slowly, that he looked out for his horses and the wagons and cars, and that it was impossible for him to give any attention to the back part of the wagon. The testimony of the plaintiff showed that she stood on the corner waiting to cross, watching for the policeman to signal, but not looking at the wagon, although she had previously seen it. While starting to cross she was hit by the iron. *Held* (1) that there was no evidence to convict the defendant of negligence; (2) that the plaintiff was guilty of contributory negligence; (3) that it was error to submit the case to the jury.

Argued Dec. 9, 1902. Appeal, No. 101, Oct. T., 1902, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1900, No. 488, on verdict for plaintiff in case of Jessie May Dennison v. North Penn Iron Company. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McCARTHY, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $786. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*Clifton Maloney,* for appellant.—There was no negligence on the part of the defendant: Van Camp Hardware & Iron Co. v. O'Brien, 62 N. E. Repr. 464; Alexander v. Penna. Water Co., 201 Pa. 252.

The plaintiff's own testimony establishes her contributory negligence: Harris v. Commercial Ice Co., 153 Pa. 278; McGovern v. Union Traction Co., 192 Pa. 344; Burke v. Union Traction Co., 198 Pa. 497; Graham v. Philadelphia, 19 Pa. Superior Ct. 292; Sullivan v. Consolidated Traction Co., 198 Pa. 187; Blaney v. Electric Traction Co., 184 Pa. 524; Robb v. Connellsville Boro., 137 Pa. 42; Shallcross v. Philadelphia, 187 Pa. 143; King v. Thompson, 87 Pa. 365; Haven v. Pittsburg, etc., Bridge Co., 151 Pa. 620; Buzby v. Phila. Traction Co., 126 Pa. 559.

*Henry J. Scott,* with him *James W. King* and *John M. Campbell,* for appellee.—The obligation of a pedestrian and a driver of a wagon when passing a crossing are mutual: McCully v. Clark, 4 W. N. C. 186; Christian v. Commercial Ice Co., 3 Pa. Superior Ct. 323.

As the danger to passers-by increases, so must the degree of care to be taken increase. A man driving a heavily loaded, unwieldy truck must use greater caution than a driver of a light, easily managed buggy: Phila. & R. R. R. Co. v. Spearen, 47 Pa. 300.

A party is not bound to anticipate the want of ordinary care or a wrongful act on the part of another, but has a right to presume that such other party will use ordinary care: Brown v. Lynn, 31 Pa. 510; Ebright v. Mineral R. R., etc., Co., 15 Atl. Repr. 709.

The circumstances of this case did not warrant the question

of contributory negligence being taken from the jury, for it is their province to judge when either of the facts are in doubt or there is any reasonable doubt as to any inference to be drawn from certain facts: Penna. R. Co. v. Barnett, 59 Pa. 259; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213; Elston v. Delaware, etc., R. R. Co., 196 Pa. 295; Conyingham v. Erie Electric Motor Co., 15 Pa. Superior Ct. 573; McGovern v. Union Traction Co., 192 Pa. 344; Borough of Easton v. Neff, 102 Pa. 474.

OPINION BY BEAVER, J., February 11, 1903 :

Negligence being the want of care according to the circumstances and the circumstances which present themselves in combination in negligence cases being practically infinite in variety, precedents are of little value in the determination of any given case. A careful consideration of all the facts and the application to them of practical common sense, under a very few well settled general principles, must determine each case for itself. This is especially so, when the facts are practically undisputed. In this case, although the facts are covered with a mass of testimony, those which are controlling are few and practically undisputed. The case presents a single question,—Was it the duty of the court to affirm the defendant's first point for charge, that "under all the evidence in the case, the verdict should be for the defendant?"

If the defendant was not negligent or if the plaintiff was guilty of contributory negligence, this point should have been affirmed.

First. Was there negligence on the part of the defendant? The defendant's driver was driving a wagon drawn by two horses, loaded with iron trusses, down Twelfth street, intending to turn westward on Market. The locality is a crowded one and a policeman was stationed at the junction of Twelfth and Market to regulate traffic. The driver, in obedience to the signal of the police officer, drove his horses over the crossing for pedestrians. He thereby secured the right of way until his wagon had passed and it was the duty of pedestrians to remain in a safe place until that had occurred. The driver had a right to be in the place in which he was with his wagon and team as they were, the wagon loaded as it was. This is not denied by

the plaintiff. The only allegation of negligence is that the turn up Market street was not made in the proper manner and that no notice was given at the rear of the wagon of the intention to make the turn. The testimony of the driver, which is not contradicted and which is quoted in part by the appellee as showing the exact condition of the wagon at the turn, is: "Q. About the time you were approaching Market street will you tell us what occurred? A. I came down Twelfth street very slowly, and as I got to Market, the reserve officer was standing there and he put his cane up for me to stop. I did. Q. When you got to Market street; what do you mean? A. That is, the north crossing on Twelfth street. Q. The crossing on Twelfth street, that is practically a continuation of the pavement of Market street? A. Yes, sir. I waited there some moments and he told me to go on and I did. I drove down as far as I could possibly go to the north track of Market street. Q. You started then from a full halt? A. Yes, sir, I did. Q. What rate of speed did you go then? A. Walking, because at that hour of the night it is usually very crowded at that corner. In fact Market street is always crowded at that hour. I went down to the north track as far as I could, without striking the southbound car and I turned and turned very slowly. Q. Turned which way? A. Turned up Market. Q. You were going west on Market street? A. Yes, sir. Q. And you drove so that your horses and wagon were on the north track of Market street? A. Yes, sir. Q. That is, the west-bound track? A. Yes, sir. Q. Then what did you do? A. The officer hallooed for me to stop and I pulled over in front of the Atlantic Tea Company's place and stopped. Q. When was this? A. This was after I made the turn." Again, upon cross-examination, the driver said: "Q. You weren't giving any attention to the hind part of the wagon; you were giving your attention to the front part entirely? A. I was watching the wagons and the cars and the horses on Market street. Q. Will you say you did or did not? A. I told you I couldn't do two things at once. Q. Which didn't you do? A. I took care of the horses and watched the wagons and cars coming up and down Market street. I couldn't do anything else; that was impossible." It is impossible to see what the driver could have done which he did not do. He stopped until given permission by the police officer to pass him. He

went as far south on Market street before making the turn as it was possible for him to go. He made the turn slowly and in making it was, of course, bound to exercise the greatest caution in handling his horses and in preventing a collision with eastbound cars or with other wagons in the neighborhood. He had a right to presume that the police officer at the crossing would prevent pedestrians from crossing until the wagon had passed and that pedestrians themselves would look before attempting to cross. We cannot see any evidence of the slightest negligence on the part of the driver. If he was lawfully upon the street—which is admitted by the plaintiff—he neglected nothing which he could have done and did nothing which he ought not to have done which in anyway contributed to the accident of which the plaintiff complains and for which she recovered in the court below.

Second. Was the plaintiff guilty of contributory negligence? The plaintiff, in her account of the accident, on cross-examination, after stating in her examination in chief that she had one foot on the pavement and the other on the crossing when the accident occurred, said : " Q. Where were you standing at that time? A. Right on the crossing, upon the pavement. Q. You then saw that the wagon had the iron extending beyond the back? A. Yes. Q. And that was before the wagon commenced to turn? A. Yes. Q. And then, while you were standing there, the wagon commenced to turn? A. It turned. Q. Going at a walk? Going at the same rate as before? A. Yes, sir. Q. And you, standing there at the curb and seeing the wagon loaded that way about to make the turn, yet stood there long enough for the iron to strike you—is that your testimony? You saw the iron before the wagon commenced to turn, did you not? A. Yes, sir. Q. And you saw the iron extending beyond? Yes, sir. Q. And you saw the wagon commence to take the turn? A. No, I didn't see the wagon make the turn. I didn't see it, until I felt the iron. Q. How was it you didn't see it? A. I was watching for the policeman to signal. Q. You said the policeman had already signalled? A. After it had passed—after it had got past. Q. After the iron or the wagon had passed? A. After the wagon had passed. Q. Had the iron passed? A. It had just about passed me." It is evident from this testimony of the plaintiff that she was not look-

ing at the wagon at all but was watching for the signal of the policeman.   It was clearly her duty to look at the wagon and to keep her eyes upon it, until it had passed a sufficient distance to allow her to make the crossing in safety.   If she was misled by the signal of the policeman, the defendant is not in anyway liable for that.   If she was mistaken in the signal of the policeman, she is alone responsible.   It is very evident that she did not look for herself and determine for herself whether or not the crossing was safe and, having failed to do this, she was guilty of such contributory negligence as would defeat a recovery.

Upon both grounds, therefore, we think the court should have affirmed the defendant's point and have given binding instructions, as requested.   Judgment reversed.